**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **WISEWEAR CORPORATION** | § | **Case No. 18-50403** |
| | § | |
| **Debtor** | § | |

**DEBTOR'S APPLICATION TO EMPLOY HERITAGE GLOBAL PARTNERS AS AUCTIONEER AND MOTION TO AUTHORIZE THE SALE OF DEBTOR'S INTELLECTUAL PROPERTY, INCLUDING, BUT NOT LIMITED TO, PATENTS AND TRADEMARKS ASSOCIATED WITH THE DEBTOR BY AUCTION**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS. IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

WiseWear Corporation (the "Debtor") respectfully make this application ("Application") to employ HERITAGE GLOBAL PARTNERS ("HERITAGE") as Auctioneers for the Debtor and Motion to Authorize the sale of Debtor's Intellectual Property, including, but not limited to, patents and trademarks associated with Debtor by Auction and representing as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this application under 28 U.S.C. §§ 157 and 1334. This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2.      Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND

3.	WiseWear Corporation is a C Corporation (Delaware) formed in 2013 for the purpose of developing connected devices and software programs to keep individuals healthy and safe. Connected devices are wearable technology products that are worn on an individual's wrist and that perform a variety of functions.	Dr. Jerry Wilmink formed the corporation with the help from numerous individuals. One notable contributor is the current board member Dr. Gary Gerlacher, who is a large investor in the corporation. Jerry Wilmink has a doctorate in biomedical engineering from Vanderbilt with a focus in biomedical optical sensors and an MBA from the University of Texas. 4. While operating, WiseWear created a robust intellectual property (IP) portfolio consisting of 6 issued patents, 7 additional patents pending related to connected devices, and numerous trademarks to protect the WiseWear brand equity.	WiseWear has sold its products both online and in store at major retailers, including Saks Fifth Avenue, Macys and Nordstrom.	In the summer of 2017, WiseWear acquired Reserve Strap, Inc., another Delaware corporation and acquired 2 patents for a wearable battery band.

4.	WiseWear initiated this bankruptcy primarily because it was unable to acquire sufficient funding to continue business operations. In the fast-paced connected market space, the lack of funding prevented WiseWear from keeping pace with changes required in the market place and from attaining a critical mass of sales that would allow economies of scale to reduce the overall cost of its products.

5.	WiseWear intends on liquidating its physical assets and intellectual property in an orderly fashion through the chapter 11 process to allow for the greatest return to the unsecured creditors.	A chapter 11 is appropriate because Gerald Wilmink is in the best position to market the intellectual property in the competitive area of connected device space.

6.	In connection with the performance of its duties and obligations as Debtor-in-Possession, the Debtor requests authority to employ HERITAGE as its auctioneer to list and sell

Debtor's intellectual property listed in Exhibit "D."[1]  Debtor has attached the auctioneer agreement as Exhibit "B."  Debtor has also attached as Exhibit "C" the general rules of the auction.

7.      In compliance with 11 U.S.C. §329 and Rule 2014, HERITAGE has attached an affidavit as Exhibit "A" detailing the connections with the Debtor or any party-in-interest. To the extent Exhibit "A" discloses any connection, the Debtor believes it is not sufficient to prohibit employment as Auctioneer.

## I.      SUPPORT AND RELIEF REQUESTED

### A.  APPLICATION TO EMPLOY AUCTIONEER

8.      The Application and Motion is supported by the attached (i) Declaration of Doug Berman as Exhibit "A," which is incorporated as if fully set forth herein. In further support of this Application, the Debtor represents as follows:

a.      It is essential to the conduct of the Debtor's reorganization efforts in its Chapter 11 case that the Debtor employ HERITAGE or another auction company to sell the intellectual property assets as there is no other practical vehicle for their sales.

b.      The Debtor must employ HERITAGE to sell the Property.

c.      HERITAGE has the accessibility, experience, expertise, and resources which enables them to provide the auctioneer services needed by the Debtor in this case. HERITAGE regularly sells intellectual property at auction. Therefore, the Debtor wants to employ HERITAGE as its auctioneer.

d.      The Debtor has made arrangements for employment of HERITAGE, for professional compensation as outlined in the auctioneer contract attached as Exhibit "B."

---

[1] Additionally, Debtor shall request in a separate motion authority to employ TRANZON as its auctioneer to list and sell Debtor's personal property, equipment, and inventory other than intellectual property.

The Debtor expressly acknowledges, understands, and agrees to all such arrangements, subject only to approval by the Court.

e.      To the best of the Debtor's knowledge, and upon information and belief, HERITAGE does not have any connections with the Debtor in this case, its creditors, any other parties in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee except as stated in Exhibit "A."

f.Furthermore, the information disclosed by HERITAGE in the declaration of Doug Berman does not preclude HERITAGE from representing the Debtor under applicable law and ethical rules. HERITAGE does not represent any other entity in this case which has any adverse interest therein; and HERITAGE will not represent any such other entity in the Chapter 11 case during its respective employment as auctioneer for the Debtor.

**B. MOTION TO AUTHORIZE AUCTION**

9.      Debtor requests the Court authorize HERITAGE to sell the intellectual property listed in Exhibit "D" by auction on May 22, 2018, in accordance with the procedures outlined in Exhibit "C." HERITAGE shall advertise the auction for a minimum of 30 days prior to the auction in accordance with Exhibit "C." Pursuant to the auctioneer agreement attached as Exhibit B, HERITAGE shall be compensated by a 10% buyer's premium commission on all completed sales that shall be added to the final price of the purchased item. HERITAGE shall also be reimbursed in the amount of $7500 for the costs associated with preparing for and advertising the sale from the sale proceeds. Moreover, in the event HERITAGE is required to post an auctioneer bond, the cost of obtaining such bond shall be reimbursed together with HERITAGE's expenses. Further, because HERITAGE's compensation is derived solely from the Buyer's Premium paid by the

successful purchaser and the reimbursable expenses are fixed at $7,500, the Debtor seeks authorization to pay HERITAGE its compensation and expense reimbursement, or to allow HERITAGE to retain said compensation and expense reimbursement in the event HERITAGE collects the sale proceeds, from the sale proceeds, within ten (10) days following its filing of the final settlement report without further application to or order of this Court. The complete terms of the Auction are stated in Exhibit "C."

## TAX CONSEQUENCES

10.     The Debtor believes there are no tax consequences to this sale. The maximum tax gain is approximately 20% of the gross sales price and sale of the property will be a substantial loss. Bidders should discuss their potential tax liability with their own tax professional.

## LIENS

11.     There is no known secured debt incumbering the intellectual property to Debtor's knowledge.

## APPLICATION OF PROCEEDS

12.     All sales proceeds shall be deposited into a Debtor-in-possession account and maintained until further order of the Court, except the Debtor shall be authorized to pay property taxes and administrative expenses approved by the Court. All liens, claims, Interests, encumbrances and liabilities over the intellectual property shall transfer and attach to the sale proceeds with the same validity, priority, force and effect (if any) that such liens, claims, interests, encumbrances and liabilities had on the Intellectual Property immediately prior to the sale date. Buyer's premium and costs of sale shall be distributed to HERITAGE upon collecting the sales proceeds.

13.     All liens, claims, Interests, encumbrances and liabilities over the Intellectual

Property shall transfer and attach to the sale proceeds with the same validity, priority, force and effect (if any) that such liens, claims, interests, encumbrances and liabilities had on the Intellectual Property immediately prior to the sale date.

14.     It is the Debtor's position that a sale in this manner is in the best interest of the estate, the Debtor, the creditors, and all interested parties and will net the estate the most, if any, money for distribution to creditors. Notice of this Motion is being forwarded to all creditors and parties in interest in accordance with Local Rule 9014.

WHEREFORE, Debtor hereby requests that it be authorized to employ HERITAGE, the Court authorize HERITAGE to auction Debtor's Intellectual Property listed on Exhibit "D" and that the Debtor have such other and further relief as is just.

Dated: March 8, 2018

Respectfully Submitted,

By:___ /s/ Gerald Wilmink___
Gerald Wilmink, CEO, Debtor


THE SMEBERG LAW FIRM, PLLC

By: /s/ Ronald Smeberg
RONALD SMEBERG
Texas Bar No. 24033967
Email: ron@smeberg.com
2010 West Kings Highway
San Antonio, Texas 78201
(210) 695-6684 (Tel)
(210) 598-7357 (Fax)

ATTORNEY FOR DEBTOR

I hereby certify that on March 8, 2018, true and correct copies of the foregoing motion were forwarded by U.S. first class mail, postage prepaid, on all parties listed on the attached Service List.

*/s/ Ronald J. Smeberg*

RONALD J. SMEBERG

**LIMITED SERVICE LIST**

**DEBTOR**
WiseWear c/o Jerry Wilmink
17742 Maui Sands
San Antonio, Texas 78255

**GOVERNMETNAL ENTITIES**
U.S. Trustee
Attn: James Rose
P.O. Box 1539
San Antonio, TX 78295-1539

U.S. Attorney
Attn: Bkcy Division
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Internal Revenue Services
Special Procedures Branch
300 E. 8th St. STOP 5026 AUS
Austin, TX 78701

Linebarger Goggan Blair & Sampson
Via email don.stecker@lgbs.com
711 Navarro, Suite 300
San Antonio, TX 78205

Texas Comptroller of Public Account
Attn: Bankruptcy
P.O. Box 149359
Austin, TX 78714-9359

**SECURED CREIDITORS**

DeZavala BP LLC
C/o Bobby Anderson Property MGR
PO Box 18
Ripon, CA 95366

Stratasys via Email At
Kelly.Larson@stratasys.com
Attn: John Folks
7665 Commerce Way
Eden Prairie, MN 55344

**TWENTY LARGEST UNSECURED CREIDITORS**

Franklin B. Floyd Sr
2723 Dryden Rd
Shaker Hts, OH 44122-2701

Ricky P. Ganim
3320 Amherst St
Houston, TX 77005-3334

JF Southwest Heart Clinic
Attn: Dr. Jianwei Feng
9888 Bellaire Blvd
Houston, TX 77036-3430

Marcy L. Lim
14515 Serrano Creek Ln
Humble, TX 77396-3768

Michael R. Shaughnessy Living Trust
Attn: Michael R. Shaughnessy
37699 Cedar Rd

Gates Mills, OH 44040-9804

Joseph Mulholland
5900 Som Center Rd
Solon, OH 44139-2350

Mutual Mobile, Inc.
206 E 9th St
Austin, TX 78701-4412

Aaron & Shelley Nichols
2413 Blue Canoe Ct
Seabrook, TX 77586-1735

Malladi S. Reddy
2398 Baycrest Dr
Houston, TX 77058-3702

Schoff Enterprises, LLC
Attn: James A. Schoff
3300 Enterprise Pkwy
Beechwood, 44122-7200

William Schoff
7126 Valentown Road
Victor, NY 14584

James Strickland
580 Bomar St
Houston, TX 77006-1407

W Wear Investment, LLC
520 S Armenia Ave, Unit 1239E
Tampa, FL 33609-3552

FF Angel V. LLC

One Letterman  Dr. Bldg D,  5th
Flr.
San Francisco, CA 94129

George Lonjak
11720  Edgewater Dr.
Lakewood, OH 44107-1771

Moustafa Banna
19324 N.  45th Dr.

Glendale, Arizona  85308

Onim Inv.  LLC,
Attn. John  Mino
824 Hardwood Ct.
Gatesmills, OH 44040-9604

Vinson & Elkins
1001 Fannin St.
Houston, Texas 77002-6760

Wilson Sonsini Goodrich
650 Page Mill Rd.
Palo Alto, CA 94304-1001

Zachariah J. Yurch
3159 Vista Mar
Carlsbad, CA 92009

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **WISEWEAR CORPORATION** | § | **Case No. 18-50403** |
| | § | |
| **Debtor** | § | |

**DECLARATION OF DOUG BERMAN IN SUPPORT OF DEBTOR'S <u>APPLICATION TO EMPLOY HERITAGE GLOBAL PARTNERS AS AUCTIONEERS</u>**

I, Doug Berman, declare:

1.     I am currently employed as an auctioneer with Heritage Global Partners, Inc. ("HERITAGE"), and have been working as auctioneer for many years, from which I have developed a particular expertise in facilitating the purchase and sale of intellectual property.

2.     I am over the age of 18 years and have personal knowledge of each of the facts stated herein, except as may be otherwise stated below, and would testify thereto if called upon to do so in a court of law.

3.     I was retained, subject to Bankruptcy Court approval, to represent the Debtor as a auctioneer regarding the sale of Debtor's intellectual property including patents and trademarks. The scope of my representation is summarized in the Auctioneer Agreement (the "Agreement"), a copy of which is attached hereto.

4.     Pursuant to the terms and conditions of the Agreement, my compensation for providing professional auctioneer services for the property described hereinafter, following Court approval, will be a buyer's premium of 10% on intellectual property sold at, prior to and following the Sale.  It will be stipulated in the terms of the auction that this commission will be paid by the purchaser at closing through the charging of a Buyer's Premium.  This compensation structure is reasonable, standard, and in accordance with auction industry practices.

   a.   The intellectual property I was retained to sell is all of Debtor's patents and trademarks listed in an attachment to Debtor's Motion to Employ HERITAGE GLOBAL PARTNERS as Auctioneers for the Debtor and Motion to Authorize the sale of Debtor's Intellectual Property, including, but not limited to, patents and trademarks associated with Debtor by Auction.

5.     To the best of my knowledge, information, and belief, neither HERITAGE nor I are creditors or insiders of the Debtor.  Moreover, neither HERITAGE nor I hold any prepetition claims against the Debtor.

6. To the best of my knowledge, information, and belief, neither HERITAGE nor I represent or hold any interest which is adverse to the Debtor or the bankruptcy estate with respect to the matters on which we are to be employed.

7. To the best of my knowledge, information, and belief, except as set forth above, neither HERITAGE nor I have any connections with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants, or the United States Trustee or any employee of the office of the United States Trustee.

8. Based on my experience and expertise as an auctioneer, I am well qualified to represent the Debtor in connection with the matters set forth herein and as such my retention is in the Debtor's best interest, the best interest of the bankruptcy estate, and the Debtor's creditors.

I declare under penalty of perjury of the laws of the United States of America and the state of California that the foregoing is true and correct, and that this declaration was executed on March 7, 2018, at Hidden Valley Lake, California.

Doug Berman



**EXCLUSIVE AUCTION AND SALES AGREEMENT**

This Exclusive Auction and Sale Agreement ("Agreement") is made as of March __, 2018 (the "Effective Date").

      BETWEEN:

                WiseWear Corporation, a _____ corporation
                5828 Sebastian Place, Suite 102-103
                San Antonio, Texas 78249
                Attention:     Gerald J. Wilmink, PhD MBA
                Telephone:    (615) 364-4985
                Email:          jwilmink@wisewear.com

                      ("Seller"),

      AND

                Heritage Global Partners, Inc., a California corporation
                Hacienda Del Mar
                12625 High Bluff Drive Suite 305
                San Diego, CA  92130
                Attention:     Kirk Dove
                Telephone:    (858) 847-0655
                Email:          kdove@hginc.com

                      ("Auctioneer")

      WHEREAS, Seller owns the entire right, title and interest in and to certain intellectual property including, but not necessarily limited to, patents, patent applications, domain name and website and more particularly described in the attached Exhibit A (collectively, the "Assets"); and

      WHEREAS, Seller wishes to sell its right, title and interest in and to the Assets, and Auctioneer has agreed to conduct a sale of the Assets on the terms and conditions set forth below;

      NOW, THEREFORE, in consideration of the above stated recitals and other good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, Auctioneer and Seller agree as follows:

      **1. REPRESENTATION**: Seller agrees to retain Auctioneer on an exclusive basis to conduct a sale of the Assets via sealed bid sale or brokerage (collectively, the "Auction").

**2. CONDUCT OF THE SALE**:

(a) The Sale will be conducted on a date and pursuant to a timeline to be mutually agreed upon by Seller and Auctioneer. The Sale will be marketed and to the extent applicable, conducted online at www.hgpauction.com (the "Website"). Seller agrees that Auctioneer may use its name, street address and logo in its advertising in accordance with Auctioneer's customary practice, including on its Website as well as in any press release, solely to perform services under this Agreement.

(b) All Assets in the Auction shall be sold to the highest bidder, provided however that the highest bid price is either equal to, or in excess of the "Reserve Price" that has been pre-established between Seller and Auctioneer. The Reserve Price is defined as that price below which Seller is not obligated to sell. In the alternative, Seller may elect to have Auctioneer offer the Assets for sale subject to Seller's right of confirmation, with such confirmation (or rejection) to be provided by Seller within one business day following the close of the Auction. Auctioneer, however, does not guarantee that any sale will be completed, and Auctioneer is not responsible in the event that a purchaser fails to live up to its agreement and complete a purchase.

(c) Seller shall be responsible for obtaining all governmental and third-party consents necessary to transfer title to the Assets. Auctioneer assumes no obligation, and makes no representations or warranties, with respect to the requirements for transfer of the Assets. It shall be the Seller's sole obligation to prepare all necessary documents and take all necessary steps to transfer title to the Assets.

**3. DISCLAIMERS OF WARRANTIES**: Auctioneer shall state both in its advertising for the Sale and at the Sale that all Assets are being sold "as is, where is and with all faults" and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose. Seller agrees to defend and indemnify Auctioneer and hold Auctioneer harmless from and against any claim or liability asserted against Auctioneer by any third party (including any purchaser of any Assets at the Sale) based on the alleged existence or breach of any alleged warranties (including alleged warranties of merchantability or fitness for a particular purpose), or from or against any fees or expenses (including attorney's fees) incurred by Auctioneer in defending against any such claim or liability. Seller acknowledges and agrees that Auctioneer has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset(s).

**4. COMPENSATION**: Auctioneer shall not charge Seller a commission. As its compensation, Auctioneer shall charge each successful bidder a 10% buyer's premium (the "Buyer's Premium") for its own account as compensation for auction services provided up to and including the actual Sale event. The Buyer's Premium shall be collected by Auctioneer directly from each purchaser in addition to the purchase price as bid for such Sale services. Payment to the Auctioneer of such Buyer's Premium by the successful bidder is not dependent on any other service provided by the Auctioneer in connection with the Sale subsequent to the actual Sale event, if any. Seller shall not be liable to Auctioneer for Buyer's Premium in the event that a purchaser fails to live up to its agreement and complete a purchase.

**5. AUCTION EXPENSES:** Auctioneer will prepare a budget for advertising, marketing, labor and miscellaneous relating to the preparation of the Assets and the marketing and conduct of the Auction, which shall not exceed US $7,500, which amount shall be advanced by Auctioneer and reimbursed by Seller to Auctioneer directly as a deduction from the net proceeds otherwise payable to Seller.

**6. PRE- AUCTION ASSET TRANSACTIONS:** Prior to the Sale, Seller may not withdraw, sell or otherwise dispose of any of the Assets. Any withdrawals prior to the Sale shall be subject to compensation to Auctioneer pursuant to this Agreement.

**7. COLLECTION AND DISBURSEMENT OF AUCTION PROCEEDS:**

(a) Auctioneer shall collect from the purchasers of the Assets the gross proceeds and amounts due as Buyer's Premium and deposit such funds into a bank depository account. Thereafter, no later than 30 calendar days after the Sale, Seller shall be issued a check from the account (a "Settlement

Check"), in the amount of the Sale proceeds (after Auctioneer has been paid from the account amounts allocable to Buyer's Premium and expense reimbursement per Section 5), subject to open items or uncollected accounts, if any.

(b) No later than 30 calendar days after the Sale, Auctioneer shall also issue to Seller a settlement report (the "Settlement Report) showing, generally, a record of sales of the Assets and the allocation of the funds generated by such sales, subject to open  items or uncollected accounts, if any. Seller acknowledges and agrees that all information that will be contained in the Settlement Report constitutes confidential and proprietary information of Auctioneer. Seller agrees that neither the Settlement Report nor any piece of information contained in the Settlement Report may be shared with, copied or distributed to any third party without Auctioneer's prior written consent.

**8. POST-AUCTION**: In the event that some Assets remain unsold at the conclusion of the Auction, or a purchaser fails to perform his obligation to pay the purchase price of an Asset (collectively, "Unsold Assets"), Auctioneer may, at its discretion, attempt to sell such Unsold Assets hereunder via privately negotiated sale to one of the other auction bidders, subject to Seller's consent, or via consignment into a subsequent auction project conducted by Auctioneer within thirty (30) days following the Sale.  Thereafter, Auctioneer shall surrender the Assets to Seller and will have no further obligation with respect to such Unsold Assets.

**9. REPRESENTATIONS AND WARRANTIES:** Seller represents and warrants to Auctioneer as follows:

(a)  Seller has good and marketable title to the Assets (including without limitation all right, title, and interest in the Assets and the exclusive right to sue for past, present and future infringements thereof);

(b)  Seller has the full right and power to assign all Assets and the underlying inventions as set forth above;

(c)  None of the Assets is subject to any exclusive licenses nor non-exclusive licenses;

(d)  All registrations for the Assets are currently valid and subsisting and in full force and effect;

(d)  There are no liens or security interests against the Assets; and

(e)  Seller has all authority necessary to enter into this Agreement and the execution and delivery of this Agreement has been duly and validly authorized.

Seller acknowledges and agrees that Auctioneer is relying on the foregoing representations and warranties in proceeding to conduct the Sale provided for under this Agreement. Seller agrees to defend and indemnify Auctioneer and hold Auctioneer harmless from and against any claim, demand, cause of action, liability or expense (including attorneys' fees) asserted against or incurred by Auctioneer in connection with Seller's breach of any of its representations, warranties or obligations in this Agreement. If any action at law or in equity is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the other party.

**10. LIMITATION OF LIABILITY**: Auctioneer's maximum liability for the breach of any obligation in connection with this Agreement or the Sale, and for any and all damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by Seller or any other person or entity in connection with this Agreement or the Sale, shall be limited to the amounts actually received by Auctioneer as compensation under this Agreement.

**11. TECHNOLOGY DISCLAIMER: AUCTIONEER DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED.**

**12. INDEPENDENT PARTIES**: This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and Auctioneer, or (ii) to imply that Auctioneer is buying the Assets of, or any interest in, Seller.

**13. ARBITRATION:** The parties agree to submit all controversies, claims and matters of difference arising out of or relating to this Agreement and the Auctioneer to arbitration in Los Angeles County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association from time to time in effect (the "Rules"). The parties may agree on a retired judge as sole arbitrator. In the absence of such agreement, there will be three arbitrators, selected in accordance with the Rules. If there are three arbitrators, a decision reached by at least two of the three arbitrators will be the decision of the arbitration panel; provided, however, that in the case of monetary damages, if there is no agreement of two arbitrators as to the amount of the award, then the highest and lowest amounts will be disregarded, and the remaining amount will be the final award of the arbitration panel. Any award of the arbitrator(s) will include costs and reasonable attorneys' fees to the successful party. The parties agree to abide by any decisions reached and awards rendered in such arbitration proceedings, and all such decisions and awards will be final and binding on both parties. There will be no appeal from any such decision or award other than for fraud or misconduct in connection with the arbitration proceedings. Judgment upon such award or decision may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, insofar as injunctive relief is sought in any action or proceeding initiated by any party to this Agreement, such injunctive relief may be sought in a judicial proceeding consistent with the jurisdiction and venue provisions below.

**14. COUNTERPARTS; FACSIMILE OR EMAIL SIGNATURES**: This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument. Delivering Signatures via facsimile or electronic mail shall be an acceptable means of executing this Agreement, and signatures so delivered shall be fully binding on the signing party.

**15. GOVERNING LAW; JURISDICTION**: This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of California as applied to agreements made in California, without regard to choice at law principles. Each party consents to jurisdiction and service of process within California for any action or proceeding arising under this Agreement, and venue in any such action will lie in Los Angeles County, California.

**16. SEVERABILITY**: The provisions of this Agreement shall be severable. Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

**17. COMPLETE AGREEMENT**: This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Sale. This Agreement may not be modified or amended except in writing signed by both parties.

IN WITNESS WHEREOF, the parties have executed this Exclusive Auction and Sale Agreement as of the Effective Date:

Seller: WiseWear Corporation        Heritage Global Partners, Inc.
FEIN: _____        California Bond Number 6150320

By: _____        By: _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____          Date: _____

## EXHIBIT A

## ASSETS

[To be provided by Seller.]

## Trademarks

Trademark Number    Trademark Status–Granted or Application    Issuing Office(s)

Exhibit C

**WISEWEAR CORP INTELLECTUAL PROPERTY SEALED-BID AUCTION BID PROCEDURES**

<u>This sale is conducted on behalf of WiseWear Corporation, Debtor In Possession, Case No. 18-50403 Pending in the Western District of Texas Bankruptcy Court. The sale is subject to final court approval. A motion to approve sale shall be filed by the Debtor within 5 days of completion of the auction.</u>

The following bid procedures (the "Bid Procedures") and the associated Bid Submission Form will be used for the sale and transfer of interests in certain Intellectual Property in re: WiseWear Corp. (the "Proceeding"), which was commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court"). The Debtor has determined that certain Intellectual Property (the "Property") is to be sold through a sealed bid sale (the "Sale") pursuant to section 363 of the Bankruptcy Code.

**Transferred Property**. The Intellectual Property includes, but is not limited to: Patents and Patent Applications, Trademarks, Domain Name(s), and Website of WiseWear Corp. The Property shall be sold to the bidder who submits the highest bid and will be conveyed or assigned, as described below pursuant to a Sale Agreement and, as applicable, section 363 of the Bankruptcy Code, free and clear of any liens, claims or interests asserted by any party, except as expressly provided below.

**Bidder Due Diligence. ALL BIDDER DUE DILIGENCE SHALL BE THE SOLE RESPONSIBILITY OF BIDDER AND MUST BE COMPLETED IN ADVANCE OF SUBMITTING A BID. THERE WILL BE NO OPPORTUNITY FOR BIDDER DUE DILIGENCE AFTER THE HIGH BID AWARD**. Materials provided by Heritage Global regarding the Intellectual Property to be sold is believed to be from reliable sources but Heritage Global does not guarantee their accuracy.

The offering and sale of the Property in this Sale is subject to the terms and conditions (the "Terms and Conditions") contained in these Bid Procedures. Prospective bidders are advised to carefully review the Bid Procedures. Bids not conforming to these Bid Procedures and those of the Sealed-Bid Submission Form preparation or submission of a sealed bid may, at the discretion of Heritage Global and Debtor to be deemed non-conforming (a "Non-conforming Bid") and disqualified from consideration.

Heritage Global, with the consent of the Debtor, reserves the right to amend, supplement or modify these Terms and Conditions from time to time. In the event of a conflict between these Terms and Conditions and any Transfer Documents, the provisions of the Transfer Documents shall control.

**Court Approval.** All bids for the Property of the Debtor are subject to approval by the Bankruptcy Court.

**Credit Bidding.** Creditors with a secured interest in the Property have the right to credit bid up to the amount of their collateral.

**Bid Deadline.** All bids must be received by Heritage Global by 5pm May 22, 2018 (PDT) (the "Bid Submission Deadline"), which will be published on the Heritage Global website, www.hgpauction.com (the "Sale Website").

All bids should be sent using the Bid Submission Form to:

Doug Berman, Director
Heritage Global Patents & Trademarks
dberman@hginc.com  707-245-441


Bids received by Heritage Global after the Bid Deadline may be deemed Non-conforming. Heritage Global reserves the right, with consent of the Debtor to extend the Bid Deadline in advance of the Bid Deadline, on notice to interested parties. Any changes to the Bid Deadline will be published on the Sale Website.

**Bids.** All bids shall be conveyed via email using the Bid Submission Form found on the Heritage Global website www.hgpauction.com and considered to be part of these Bid Procedures.  Bidders shall download the form, complete and sign the form, scan, and email to:

Doug Berman, Director
Heritage Global Patents & Trademarks
 dberman@hginc.com
707-245-4417

**Bid Deposit.** Bidders must include a bid deposit (the "Bid Deposit") with their bid in the amount of 5% of the purchase price they have bid, inclusive of the 10% Buyer's Premium by wire transfer to Counsel for Debtor.  Wire Instructions will be found on the Bid Submission Form. Personal or company checks will not be accepted.  All parties submitting a credit bid are exempt from this requirement.

BIDS WILL NOT BE DEEMED TO BE A "CONFORMING BID" UNTIL SUCH TIME AS BOTH THE BID SUBMISSION FORM AND THE 5% DEPOSIT OF THE PURCHASE PRICE (INCLUSIVE OF 10% BUYER'S PREMIUM ON THAT DEPOSIT AMOUNT) HAVE BOTH BEEN RECEIVED IN ADVANCE OF THE BID SUBMISSION DEADLINE.

Deposits from nonwinning bids shall be returned to the bidder within 7 days of the auction.

**Buyer's Premium**.  At closing, the successful bidder will pay, in addition to the bid price, a Buyer's Premium at an amount equal to 10% of the successful high bid price.   The Buyer's Premium shall be added to the bid price to determine the total purchase price for the Property.

**Transfer Documents.**  Transfer Documents will be prepared by WiseWear and will be posted for Bidder review found on the Heritage Global website www.hgpauction.com .  Bids not

in full compliance with the auction shall be considered "Non-Conforming" and will be disqualified from consideration.

**Best and Final Bids.**  Bidders should convey their bids on a "Best and Final" basis.  In the event of very close bid amounts Heritage Global may subsequently conduct a telephonic overbid auction to determine the final successful high bid price.

**Evaluation and Award of Bids.**  All bids received by the Bid Deadline will be reviewed by Heritage Global and presented to the Debtor for consideration, other than rejected Non-Conforming bids.

**Non-Revocation of Bid.**  Sealed bids will be deemed in force as of the Deadline for Bid Submission. The highest bid received shall be deemed the "High-Bidder".  High-Bidder's deposit will become non-refundable as soon as high bid is accepted, subject to Bankruptcy Court approval.

**Underbids.**  Bid Deposits for unsuccessful bids (made by other than by the High-Bidder and the next highest bidder ("the Backup-Bidder) will be returned by wire transfer within (7) days after the Deadline for Bid Submission.

Backup-Bidder's deposit will be held until the High-Bidder closes and Backup-Bidder's bid will remain irrevocable until the High Bidder closes on the transaction.  In the event of default by the High Bidder, Backup Bidder's bid will be determined to be the High Bid, and Backup-Bidders deposit will become non-refundable, and Backup-Bidder will be expected to close on the purchase.

**Hearing to Approve Sale**.  The Debtor shall file a motion to approve the sale to the winning bidder within 5 days of completion of the auction and request a hearing be set at the court's earliest convenience.

**Due Diligence Materials.**  Due Diligence materials made available to Heritage Global will be found on the Heritage Global website at www.hgpauction.com

**Effective Date of Award of Bid.**  The effective date of the award of the bid for the Property shall be the date that the Debtor executes the Transfer Documents.

**Free and Clear of All Liens.**  The Property will be conveyed free and clear of all liens pursuant to orders of the Bankruptcy Court. The property will be conveyed "AS IS, WHERE IS, WITH ALL FAULTS," regarding any conditions affecting the Property, with no representations or warranties whatsoever, express or implied.

**Confidentiality.**  Any information deemed by Debtor to be of a confidential nature (if any) shall be housed electronically in a Virtual Data Room accessible from the Heritage Global website upon execution of a Non-Disclosure Agreement.  All other materials made available to Heritage Global will be available online on the Heritage Global website at www.hgpuaction.com

**Conflicts.**  In the event of a conflict between these Bid Procedures and any Transfer Documents, the provisions of the Transfer Documents shall control.

**Amendments.**  These Bid Procedures, the Transfer Documents, and any other required sale or closing documents may be amended only in writing and with the prior consent of the Debtor.

**Disclaimer.**  The Debtor and Heritage Global, and their employees, agents, subsidiaries and affiliates, acknowledge that the Debtor and Heritage Global may not have complete knowledge of the Property being sold.  Accordingly, except as otherwise specifically stated in the Transfer Documents, the Debtor and NRC and their employees, agents, subsidiaries and affiliates, hereby disclaim any warranty, guaranty or representation, express or implied, oral or written, past, present, or future, with respect to the property being sold.  Except as stated above and as set forth in the Transfer Documents, the sale of the Property shall be on an "AS IS, WHERE IS, WITH ALL FAULTS," basis, and purchaser expressly agrees that the Debtor and NRC, and their employees, agents, subsidiaries or affiliates, make no warranty or representation, express or implied, or arising by operation of law, including, but not limited to, any warranty of condition, habitability, merchantability or fitness for a particular purpose, with respect to the Property. Purchaser is buying the Property based on their own investigation, and, by accepting title to all or part of the Property, acknowledge that they have conducted such investigations as they have deemed necessary or advisable and that the purchaser is not relying upon any representations of the Debtor, Heritage Global, or any of their agents whatsoever.

The materials and information concerning the Property contained herein, together with any marketing material, websites, and all other information provided by the Debtor, Heritage Global, their counsel and/or their employees, agents, subsidiaries or affiliates, is based in part upon information and materials obtained from sources deemed reliable without independent verification.  Bidders must not base their bids upon information disseminated in the Sale Website, any marketing material, due diligence information, but shall rely solely upon their own analysis. No warranty or representation, express or implied, is made by either the Debtor, Heritage Global, or any of their employees and agents, as to the accuracy or completeness of any or all such information.

WiseWear IP Auction with Heritage IP

Exhibit A – Issued patents, patent applications, trademarks, and domain name

| Matter ID | TITLE | Serial No. / Patent No. / TM No. | Jurisdiction |
|---|---|---|---|
| 12146 | Fall Prediction Assessment | 14/057,676 | Pat App US |
| 12148 | Fall Prediction Assessment | 14/057,687 | Pat App US |
| 12229 | TM: EVOLVE | 86-304,274 | TM App US |
| 12235 | TM: See Inside | 86-344,122 | TM App US |
| 12265 | TM: WiseWear | 86-051,956 | TM App US |
| 12266 | Recommending An Exercise Activity For A User | 14/556,188 | Pat App US |
| 12267 | Exercise Behavior Prediction | 14/556,191 / 9,691,023 | Pat App US |
| 12283 | Choosing A Heart Rate Monitor For A Wearable Monitoring | 14/564,168 | Pat App US |
| 12476 | TM: WiseWear Logo | 86-689,453 | TM App US |
| 12478 | TRACK 1: Coplanar Antenna | 14/789,629 / 9,570,808 | Pat App US |
| 12479 | TM: Add Years To Life-Add Life To Years | 86-689,493 | TM App US |
| 12544 | TRACK 1: Coplanar Antenna | 14/789,704 / 9,640,869 | Pat App US |
| 12551 | TM: Calder | 86-689,738 / 5,143,543 | TM App US |
| 12552 | TM: Duchess | 86-689,752 / 5,311,885 | TM App US |
| 12553 | TM: Kingston | 86-689,765 / 5,311,886 | TM App US |
| 12554 | TM: Lose The Screen, Not The Moment | 86-689,724 | TM App US |
| 12565 | TM: Socialite | 86-693,240 | TM App US |
| 12645 | Tactile Messaging Via Wearable Device | 14/937,509 / 9,883,022 | Pat App US |
| 12694 | Waistband Monitoring Analysis For A User | 15/152,443 | Pat App US |
| 12916 | PCT OF 12645: Tactile Messaging Via Wearable Device | PCT/US2016/061362 | Pat App PCT |
| 12935 | NATL ENTRY OF 12916: Tactile Messaging Via Wearable Device | | Pat App Foreign |
| 12991 | PROV: Non-Invasive Sensor Platform | 62/454,699 | Pat App US - PROV |
| 13019 | CONT. OF 12544: Coplanar Antenna | 15/474,586 | Pat App US - CON |
| 13031 | CONT. OF 12267: Exercise Behavior Prediction | 15/592,433 | Pat App US - CON |

| TITLE | Serial No. / Patent No. / TM No. | Jurisdiction | Status | Action | Government Fees | extension fee | fees |
|---|---|---|---|---|---|---|---|
| Fall Prediction Assessment | 14/057,676 | Pat App US | RAF DUE 02-01-18, final office aciton received 11/1/17; Abandonment date 5/1/18 | file RCE by 3/1/18 | $650 | $100 | $750 |
| Fall Prediction Assessment | 14/057,687 | Pat App US | RAF DUE 01-05-18; final office action received 10/5/17; Abandonment date 4/5/18 | file RCE by 3/5/18 | $650 | $300 | $950 |
| TM: EVOLVE | 86-304,274 | TM App US | ABANDONED | | | | $0 |
| TM: See Inside | 86-344,122 | TM App US | ABANDONED | | | | $0 |
| TM: WiseWear | 86-051,956 | TM App US | ISSUED | | | | $0 |
| Recommending An Exercise Activity For A User | 14/556,188 | Pat App US | ABANDONED | | | | $0 |
| Exercise Behavior Prediction | 14/556,191 / 9,691,023 | Pat App US | ISSUED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 06-27-2020; | | | | $0 |
| Choosing A Heart Rate Monitor For A Wearable Monitoring | 14/564,168 | Pat App US | ABANDONED | | | | $0 |
| TM: WiseWear Logo | 86-689,453 | TM App US | ABANDONED, Petition to Revive due 3/16/18 if you want to reopen | file petition to revive ASAP | $100 | | $100 |
| TRACK 1: Coplanar Antenna | 14/789,629 / 9,570,808 | Pat App US | ISSUED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 02-14-2020; | | | | $0 |
| TM: Add Years To Life-Add Life To Years | 86-689,493 | TM App US | SOU DUE 02-07-18 | file petition to revive ASAP + extension for statement of use | $250 | | $250 |
| TRACK 1: Coplanar Antenna | 14/789,704 / 9,640,869 | Pat App US | ISSUED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 05-02-2020; | | | | $0 |
| TM: Calder | 86-689,738 / 5,143,543 | TM App US | REGISTERED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 02-14-2022; | | | | $0 |
| TM: Duchess | 86-689,752 / 5,311,885 | TM App US | REGISTERED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 10-17-2022; | | | | $0 |
| TM: Kingston | 86-689,765 / 5,311,886 | TM App US | REGISTERED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 10-17-2022; | | | | $0 |
| TM: Lose The Screen, Not The Moment | 86-689,724 | TM App US | SOU DUE 02-07-18 | file petition to revive ASAP + extension for statement of use | $100 | | $100 |
| TM: Socialite | 86-693,240 | TM App US | ROA DUE 03-08-18 | file response to OA by 3/8/18 | $0 | | $0 |
| Tactile Messaging Via Wearable Device | 14/937,509 / 9,883,022 | Pat App US | ISSUED. 1ST MAINTENANCE FEE OPEN FOR PAYMENT 01-30-2021 | | | | $0 |
| Waistband Monitoring Analysis For A User | 15/152,443 | Pat App US | PUBLISHED, waiting on first office action | | | | $0 |
| PCT OF 12645: Tactile Messaging Via Wearable Device | PCT/US2016/061362 | Pat App PCT | Received ISR, no response needed | | | | |
| NAT'L ENTRY OF 12916: Tactile Messaging Via Wearable Device | | Pat App Foreign | NAT'L ENTRY: DUE 05-10-18 | file national stage entry in select countries | varies based on countries selected | | $0 |
| PROV: Non-Invasive Sensor Platform | 62/454,699 | Pat App US - PROV | FILED | | | | |
| CONT. OF 12544: Coplanar Antenna | 15/474,586 | Pat App US - CON | RRR DUE 03-26-18 | | | | $0 |
| CONT. OF 12267: Exercise Behavior Prediction | 15/592,433 | Pat App US - CON | FILED | | | | $2,150 |

| Document # | PDF | Granted Patent # | App Serial # | Title | Abstract | Assignee (current) | Inventors | Agent | Priority Date | File Date | Publish/Grant Date | Next Maintenance Date | Estimated Expiration | CPC Classes | Country Code | Kind | Family ID | Reverse Cites | FCITE_CT | Top Citing Assignees | Family Size Count | Legal Status | Application Status | Execution Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US9581972B1 | https://app.accla | | 15/144327 | Flexible unitary charging band system | A band system for a wearable device, or alternately, a flexible smart strap, worn as an article of apparel, for providing reserve power and enhanced functionality to a portable digital device. The band system or smart strap provides both a stylish fashion accessory and a functional rechargeable secondary power source to address an increasing demand for additional battery life due to greater digital demands and functionality of digital smart devices and optionally includes an interchangeable detachable strap with integrated rechargeable batteries, a charging circuit that integrates with a digital device, an interface for recharging the smart strap batteries or a connected portable digital device battery in combination with the smart strap batteries. An additional interface is also described, capable of providing further functionality for various types of data transfer. | WISEWEAR CORPORATION | Arrow, John; Musgrave, Lane; Jones, Bailey; Campbell, Jessica; Hartzell, Charles | WILSON SONSINI GOODRICH & ROSATI | 2015-12-18 | 2016-05-02 | 2017-02-28 | 2021-02-28 | 2036-05-02 | G04C10/00; A44C5/0007; A44C5/14; G04C10/04; G04G17/06; G04G21/04; G06F1/163; G06F1/3212; H01M2/1044; H01M2/1055; H01M2/1066; H01M10/425; H01M10/46; H02J7/0042; H02J7/0044; H02J7/0052; H02J7/0072; H02J2007/0062 | US | B1 | 58056564 | 22 | 4 | OMEGA LTD (2); MICROSOFT CORP (1); MICROSOFT TECH LICENSING LLC (1); WISEWEAR CORP (1) | 1 | Active | | 2018-01-03 |
| US20160151668/ | https://app.accla | US9691023 B2 | 14/556191 | EXERCISE BEHAVIOR PREDICTION | Methods, apparatuses, and computer readable mediums for exercise behavior prediction are provided. In a particular embodiment, the prediction evaluation controller is configured to generate an exercise activity pattern based on correlations between scheduling of a user's historical non-exercise events and the user's historical exercise events. In the particular embodiment, the prediction evaluation controller is also configured to generate, based on the generated exercise activity pattern, by the prediction evaluation controller, a future exercise event to correspond with a future non-exercise event scheduled on the user's calendar. In the particular embodiment, the prediction evaluation controller is also configured to provide an indication of the generated future exercise event. | WISEWEAR CORPORATION | Barnes, Ronald A.; Beens, Jason A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J. | WISEWEAR CORP | 2014-11-30 | 2014-11-30 | 2016-06-02 | | | G06Q10/1095; G06N5/02; G06N5/04; G09B7/02 | US | A1 | 56078524 | 1 | 3 | INTEL CORP (1); PIXART IMAGING INC (1) | 3 | | Granted | 2014-11-27 |
| US20160157718/ | https://app.accla | | 14/564168 | CHOOSING A HEART RATE MONITOR FOR A WEARABLE MONITORING DEVICE | Methods, apparatuses, and computer readable mediums for choosing a heart rate monitor for a wearable monitoring device. In a particular embodiment, the wearable monitoring device identifies a location of a wearable monitoring device on a user; selects based on an identification of the location, a heart rate monitor from the plurality of heart rate monitors; and uses the selected heart rate monitor to monitor a heart rate of the user. | WISEWEAR CORPORATION | Barnes, Ronald A.; Beens, Jason A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J. | WISEWEAR CORP | 2014-12-09 | 2014-12-09 | 2016-06-09 | | | A61B5/02438; A61B5/02055; A61B5/02416; A61B5/0245; A61B5/1118; A61B5/6823; A61B5/6824; G06F19/3481; G16H40/63 | US | A1 | 56093151 | 0 | 2 | PIXART IMAGING INC (1); SALUTRON INC (1) | 1 | | Not Granted | 2014-12-18 |
| US20170134560/ | https://app.accla | US9883022 B2 | 14/937509 | TACTILE MESSAGING VIA A WEARABLE DEVICE | In a particular embodiment, methods, apparatuses, computer program products, and devices for tactile messaging include receiving motion data from an accelerometer within a wearable device and determining that the received motion data matches a particular defined motion pattern of a plurality of defined motion patterns. In the particular embodiment, tactile messaging includes in response to determining that the received motion data matches the particular defined motion pattern, identifying one or more recipients and a message content that correspond to the particular defined motion pattern. Tactile messaging, according to the particular embodiment, also includes in response to identifying the one or more recipients and the message content that correspond to the particular defined motion pattern, initiating transmission, to the identified one or more recipients, a text message that includes the message content. | WISEWEAR CORPORATION | Barnes, Ronald A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J.; Wilson, Jason B. | WISEWEAR CORP | 2015-11-10 | 2015-11-10 | 2017-05-11 | | | H04M1/72552; F41H9/10; G06F1/163; G06F1/1694; G06F3/011; G06F3/016; G06F3/017; G06F2200/1636; G08B1/08; G08B15/004; G08B15/02; G08B25/016; H04L51/20; H04L67/306; H04M1/72541; H04M1/72569; H04W4/023; H04W4/12 | US | A1 | 57392058 | 3 | 1 | INTEL CORP (1) | 3 | | Granted | 2015-11-16 |
| US20160151672/ | https://app.accla | | 14/556188 | RECOMMENDING AN EXERCISE ACTIVITY FOR A USER | Methods, apparatuses, and computer readable mediums for recommending an exercise activity for a user are provided. In a particular embodiment, the recommendation evaluation controller is configured to match a generated motion pattern that is based on sensed motion a user with a stored motion pattern selected from a plurality of stored motion patterns, where each stored motion pattern corresponds to a particular exercise activity. In the particular embodiment, the recommendation evaluation controller is also configured to identifying, based on the selected stored motion pattern and an historical exercise activity record for the user, by the recommendation evaluation controller, a recommended exercise activity for the user to perform. In the particular embodiment, the recommendation evaluation controller is also configured to provide an indication of the recommended exercise activity. | WISEWEAR CORPORATION | Barnes, Ronald A.; Beens, Jason A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J. | WISEWEAR CORP | 2014-11-30 | 2014-11-30 | 2016-06-02 | | | G06F19/3481; G06K9/00342; G06Q30/02 | US | A1 | 56078525 | 2 | 1 | PIXART IMAGING INC (1) | 1 | | Not Granted | 2014-11-27 |
| US9640869B2 | https://app.accla | | 14/789704 | Coplanar antenna | In a particular embodiment of the present disclosure, a coplanar antenna includes a conductive plane having a first dimension and a second dimension, wherein the length of the conductive plane along the first dimension is less than one-quarter of a wavelength of a resonant frequency; an insulating region disposed within the conductive plane, wherein the insulating region is of a shape that outlines a conductive peninsula, wherein: the conductive peninsula is coupled to the conductive plane; the conductive peninsula is substantially coplanar to a major portion of the conductive plane; the conductive peninsula is electrically coupled to an electric feed circuit such that an impedance associated with the conductive peninsula when electrically coupled substantially matches a signal impedance at the electrical feed circuit; and the conductive peninsula is operable to resonate at the resonant frequency after receiving a current from the electric feed circuit. | WISEWEAR CORPORATION | Beens, Jason A. | SPRAGGINS BARRETT H; KENNEDY LENART SPRAGGINS LLP | 2015-07-01 | 2015-07-01 | 2017-05-02 | 2021-05-02 | 2035-07-01 | H01Q9/0407; A61B5/0024; A61B5/681; H01Q1/273; H01Q9/0442 | US | B2 | 57684090 | 7 | 0 | | 3 | Active | | 2015-07-16 |
| US9691023B2 | https://app.accla | | 14/556191 | Exercise behavior prediction | Methods, apparatuses, and computer readable mediums for exercise behavior prediction are provided. In a particular embodiment, the prediction evaluation controller is configured to generate an exercise activity pattern based on correlations between scheduling of a user's historical non-exercise events and the user's historical exercise events. In the particular embodiment, the prediction evaluation controller is also configured to generate, based on the generated exercise activity pattern, by the prediction evaluation controller, a future exercise event to correspond with a future non-exercise event scheduled on the user's calendar. In the particular embodiment, the prediction evaluation controller is also configured to provide an indication of the generated future exercise event. | WISEWEAR CORPORATION | Barnes, Ronald A.; Beens, Jason A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J. | SPRAGGINS BARRETT H; KENNEDY LENART SPRAGGINS LLP | 2014-11-30 | 2014-11-30 | 2017-06-27 | 2021-06-27 | 2034-11-30 | G06Q10/1095; G06N5/02; G06N5/04; G09B7/02 | US | B2 | 56078524 | 10 | 0 | | 3 | Active | | 2014-11-27 |
| US9883022B2 | https://app.accla | | 14/937509 | Tactile messaging via a wearable device | In a particular embodiment, methods, apparatuses, computer program products, and devices for tactile messaging include receiving motion data from an accelerometer within a wearable device and determining that the received motion data matches a particular defined motion pattern of a plurality of defined motion patterns. In the particular embodiment, tactile messaging includes in response to determining that the received motion data matches the particular defined motion pattern, identifying one or more recipients and a message content that correspond to the particular defined motion pattern. Tactile messaging, according to the particular embodiment, also includes in response to identifying the one or more recipients and the message content that correspond to the particular defined motion pattern, initiating transmission, to the identified one or more recipients, a text message that includes the message content. | WISEWEAR CORPORATION | Barnes, Ronald A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J.; Wilson, Jason B. | SPRAGGINS BARRETT H; KENNEDY LENART SPRAGGINS LLP | 2015-11-10 | 2015-11-10 | 2018-01-30 | 2022-01-30 | 2035-11-10 | H04M1/72552; F41H9/10; G06F1/163; G06F1/1694; G06F3/011; G06F3/016; G06F3/017; G06F2200/1636; G08B1/08; G08B15/004; G08B15/02; G08B25/016; H04L51/20; H04L67/306; H04M1/72541; H04M1/72569; H04W4/023; H04W4/12 | US | B2 | 57392058 | 3 | 0 | | 3 | Active | | 2015-11-16 |
| US20170005411/ | https://app.accla | US9640869 B2 | 14/789704 | COPLANAR ANTENNA | In a particular embodiment of the present disclosure, a coplanar antenna includes a conductive plane having a first dimension and a second dimension, wherein the length of the conductive plane along the first dimension is less than one-quarter of a wavelength of a resonant frequency; an insulating region disposed within the conductive plane, wherein the insulating region is of a shape that outlines a conductive peninsula, wherein: the conductive peninsula is coupled to the conductive plane; the conductive peninsula is substantially coplanar to a major portion of the conductive plane; the conductive peninsula is electrically coupled to an electric feed circuit such that an impedance associated with the conductive peninsula when electrically coupled substantially matches a signal impedance at the electrical feed circuit; and the conductive peninsula is operable to resonate at the resonant frequency after receiving a current from the electric feed circuit. | WISEWEAR CORPORATION | Beens, Jason A. | WISEWEAR CORP | 2015-07-01 | 2015-07-01 | 2017-01-05 | | | H01Q9/0407; A61B5/0024; A61B5/681; H01Q1/273; H01Q9/0442 | US | A1 | 57684090 | 3 | 0 | | 3 | | Granted | 2015-07-16 |
| US20170271769/ | https://app.accla | | 15/474586 | COPLANAR ANTENNA | In a particular embodiment of the present disclosure, a coplanar antenna includes a conductive plane having a first dimension and a second dimension, wherein the length of the conductive plane along the first dimension is less than one-quarter of a wavelength of a resonant frequency; an insulating region disposed within the conductive plane, wherein the insulating region is of a shape that outlines a conductive peninsula, wherein: the conductive peninsula is coupled to the conductive plane; the conductive peninsula is substantially coplanar to a major portion of the conductive plane; the conductive peninsula is electrically coupled to an electric feed circuit such that an impedance associated with the conductive peninsula when electrically coupled substantially matches a signal impedance at the electrical feed circuit; and the conductive peninsula is operable to resonate at the resonant frequency after receiving a current from the electric feed circuit. | WISEWEAR CORPORATION | Beens, Jason A. | WISEWEAR CORP | 2015-07-01 | 2017-03-30 | 2017-09-21 | | | H01Q9/0407; A61B5/0024; A61B5/681; H01Q1/273; H01Q9/0442 | US | A1 | 57684090 | 0 | 0 | | 3 | | Not Granted | 2015-07-16 |
| US20170249599/ | https://app.accla | | 15/592433 | EXERCISE BEHAVIOR PREDICTION | Methods, apparatuses, and computer readable mediums for exercise behavior prediction are provided. In a particular embodiment, the prediction evaluation controller is configured to generate an exercise activity pattern based on correlations between scheduling of a user's historical non-exercise events and the user's historical exercise events. In the particular embodiment, the prediction evaluation controller is also configured to generate, based on the generated exercise activity pattern, by the prediction evaluation controller, a future exercise event to correspond with a future non-exercise event scheduled on the user's calendar. In the particular embodiment, the prediction evaluation controller is also configured to provide an indication of the generated future exercise event. | WISEWEAR CORPORATION | Barnes, Ronald A.; Beens, Jason A.; Elam Jr., David P.; Ibey, Bennett L.; Wilmink, Gerald J. | WISEWEAR CORP | 2014-11-30 | 2017-05-11 | 2017-08-31 | | | G06Q10/1095; G06N5/02; G06N5/04; G09B7/02 | US | A1 | 56078524 | 0 | 0 | | 3 | | Not Granted | 2014-11-27 |
| WO/2017/08353 | https://app.accla | | US2016/061362 | TACTILE MESSAGING VIA A WEARABLE DEVICE | In a particular embodiment, methods, apparatuses, computer program products, and devices for tactile messaging include receiving motion data from an accelerometer within a wearable device and determining that the received motion data matches a particular defined motion pattern of a plurality of defined motion patterns. In the particular embodiment, tactile messaging includes in response to determining that the received motion data matches the particular defined motion pattern, identifying one or more recipients and a message content that correspond to the particular defined motion pattern. Tactile messaging, according to the particular embodiment, also includes in response to identifying the one or more recipients and the message content that correspond to the particular defined motion pattern, initiating transmission, to the identified one or more recipients, a text message that includes the message content. | WISEWEAR CORPORATION | BARNES, Ronald A.; ELAM, David P. Jr.; IBEY, Bennett L.; WILMINK, Gerald J.; WILSON, Jason B. | SPRAGGINS H BARRETT ET AL | 2015-11-10 | 2016-11-10 | 2017-05-18 | | | H04M1/72552; F41H9/10; G06F1/163; G06F1/1694; G06F3/011; G06F3/016; G06F3/017; G06F2200/1636; G08B1/08; G08B15/004; G08B15/02; G08B25/016; H04L51/20; H04L67/306; H04M1/72541; H04M1/72569; H04W4/023; H04W4/12 | WO | A1 | 57392058 | 7 | 0 | | 3 | | Not Granted | |
| US9570808B2 | https://app.accla | | 14/789629 | Coplanar antenna | A coplanar antenna including a conductive plane, wherein the length of the conductive plane along a first dimension is less than one-quarter of a wavelength of a resonant frequency; an insulating region within the conductive plane, wherein the insulating region is of a shape that outlines a conductive peninsula, wherein: the conductive peninsula is coupled to the conductive plane, the conductive peninsula is substantially coplanar to a major portion of the conductive plane, the conductive peninsula is operable to be electrically coupled to an electric feed circuit, and the conductive peninsula is operable to electrically couple a tunable inductance to the conductive plane after receiving a current from the electric feed circuit. | WISEWEAR CORPORATION | Beens, Jason A. | SPRAGGINS BARRETT H; KENNEDY LENART SPRAGGINS LLP | 2015-07-01 | 2015-07-01 | 2017-02-14 | 2021-02-14 | 2035-07-01 | H01Q9/0407; G04G17/04; G04G21/04; G04R60/04; G04R60/06; G06F1/163; H01Q1/243; H01Q1/273; H01Q1/38; H01Q9/0421 | US | B2 | 57683326 | 21 | 0 | | 2 | Active | | 2015-07-16 |
| US20170005410/ | https://app.accla | US9570808 B2 | 14/789629 | COPLANAR ANTENNA | A coplanar antenna including a conductive plane, wherein the length of the conductive plane along a first dimension is less than one-quarter of a wavelength of a resonant frequency; an insulating region within the conductive plane, wherein the insulating region is of a shape that outlines a conductive peninsula, wherein: the conductive peninsula is coupled to the conductive plane, the conductive peninsula is substantially coplanar to a major portion of the conductive plane, the conductive peninsula is operable to be electrically coupled to an electric feed circuit, and the conductive peninsula is operable to electrically couple a tunable inductance to the conductive plane after receiving a current from the electric feed circuit. | WISEWEAR CORPORATION | Beens, Jason A. | WISEWEAR CORP | 2015-07-01 | 2015-07-01 | 2017-01-05 | | | H01Q9/0407; G04G17/04; G04G21/04; G04R60/04; G04R60/06; G06F1/163; H01Q1/243; H01Q1/273; H01Q1/38; H01Q9/0421 | US | A1 | 57683326 | 0 | 0 | | 2 | | Granted | 2015-07-16 |
| US20150112163/ | https://app.accla | | 14/057687 | FALL PREDICTION ASSESSMENT | Methods, apparatuses, and computer readable mediums for fall prediction assessment are provided. In a particular embodiment, a fall prediction profile generator is configured to identify, based on health status data associated with a patient, a hydration threshold for the patient. The fall prediction profile generator is also configured to store the identified hydration threshold as part of a hydration profile associated with the patient and provide the hydration profile to a fall prediction controller to generate a fall prediction assessment of the patient based on the hydration profile and a current hydration indicator associated with the patient. | WISEWEAR CORPORATION | Wilmink, Gerald J. | WISEWEAR CORP | 2013-10-18 | 2013-10-18 | 2015-04-23 | | | A61B5/443; A61B5/1117; A61B5/7275 | US | A1 | 52826764 | 8 | 0 | | 1 | | Not Granted | 2013-10-17 |
| USD794492S1 | https://app.accla | | 29/555433 | Smart watch accessory | | WISEWEAR CORPORATION | Arrow, John; Musgrave, Lane; Jones, Bailey; Campbell, Jessica; Hartzell, Charlie | WILSON SONSINI GOODRICH & ROSATI | 2016-02-22 | 2016-02-22 | 2017-08-15 | 2032-08-15 | 2032-08-15 | | US | S1 | 59560862 | 31 | 0 | | 1 | Active | | 2018-01-03 |
| US20170325740/ | https://app.accla | | 15/152443 | WAISTBAND MONITORING ANALYSIS FOR A USER | Methods, apparatuses, and computer readable mediums for waistband monitoring analysis for a user are provided. In a particular embodiment, a waistband monitoring device is configured to generate a motion pattern based on motion data from a motion sensor coupled to the waistband monitoring device; receive physiological data generated by a physiological sensor coupled to the waistband monitoring device, wherein the physiological data indicates at least one vital sign of the user; identify an activity of the user that corresponds to the motion data and the physiological data; and generate an analysis of the user's performance of the identified activity based on the motion data and the physiological data. | WISEWEAR CORPORATION | Barnes, Ronald A.; Elam Jr., David P.; Ibey, Bennett L.; Shahhaidar, Ehsaneh; Wilmink, Gerald J.; Wilson, Jason B.; Womble, Daniel O. | WISEWEAR CORP | 2016-05-11 | 2016-05-11 | 2017-11-16 | | | A61B5/6804; A61B5/01; A61B5/02438; A61B5/0402; A61B5/0488; A61B5/0533; A61B5/08; A61B5/1112; A61B5/1118; A61B5/1123; A61B5/14542; A61B5/4812; A61B5/486; A61B5/4866; A61B5/4875; A61B5/7278; A61B5/742; A61B2560/0242; A61B2562/0219 | US | A1 | 60296813 | 1 | 0 | | 1 | | Not Granted | 2016-05-14 |
| US20150112162/ | https://app.accla | | 14/057676 | Fall Prediction Assessment | Methods, apparatuses, and computer readable mediums for fall prediction assessment are provided. In a particular embodiment, a fall prediction controller is configured to compare a hydration indicator associated with a person to a hydration threshold and based on a result of the comparison of the hydration indicator to the hydration threshold, generate a fall prediction assessment of the patient. | WISEWEAR CORPORATION | Wilmink, Gerald J. | WISEWEAR CORP | 2013-10-18 | 2013-10-18 | 2015-04-23 | | | A61B5/443; A61B5/1117; A61B5/7275 | US | A1 | 52826763 | 1 | 0 | | 1 | | Not Granted | 2013-10-17 |